Mr. McIntyre, when you're ready. Thank you, Your Honor. I'm here on behalf of the appellant defendant Alvin Johnson. If I could just briefly would like to kind of go through a history of procedurally kind of make everybody understand why we're here today. The situation, Mr. Johnson entered into a plea agreement with the government, was initially determined to be a career offender and was sentenced as a career offender before the district court to a 128 month term of imprisonment. Subsequent to sentencing, one of Mr. Johnson's predicate offenses was amended at the state court level. It was amended judgment filed such that that predicate offense was no longer a felony. Because of that, he no longer had two prior predicate offenses and was no longer considered to be a career offender. The parties entered into a consent motion to remand for resentencing based upon him no longer being a career offender. That consent motion was granted by the court and he was scheduled for resentencing. Prior to resentencing, a supplemental pre-sentence report was issued by the probation office agreeing that he was no longer a career offender and determined there was a new guideline range of 57 to 71 months. Prior to resentencing, the government filed a motion asking for upward departure or an upward variance. Resentencing occurred before the district court. The government asked that the original sentence of 128 months be put back in place. The district court did vary upward, not going to 128, but resentencing the defendant to 120 months. Based upon that, the defendant filed a timely notice of appeal. We contend that when the government filed a motion for upward departure, upward variance, that they plainly breached the plea agreement. The plea agreement situation is looking at it briefly. The parties agreed to a base offense level of 22 based upon a drug quantity and the parties also agreed to a three level reduction. Why do you say that? I'm just not sure I understand that provision. That's an agreement on the quantity of narcotics, which admittedly is an important part of the base offense level. Do we necessarily have to read that as being the entire base offense level calculation when I'm looking at B? Because it says the quantity of narcotic to be used in determining the base offense level is 80 kilograms but less than 100. That's the equivalent of this. When we figure out a base offense level, the drug quantity is the first but not the only piece of the guidelines calculation. Correct, absolutely correct. But there's nothing else in here about adjustments or looking at other levels. The only thing it talks about is a base offense level of 22 and it also talks about and mentions a downward adjustment for acceptance of responsibility. It doesn't talk about other terms or other possibilities. I agree, that's the point. It doesn't talk about those things because those are, as the court reflects, those are left to the court in the supplemental precincts report came out, there were no other adjustments. This was the only thing that was asked for. The government didn't ask for an adjustment for any other, you know, such as a leadership role or something like that that we sometimes see or a firearm adjustment. No one asked for that. There were no objections to that offense level ever being filed. So once there was nothing filed and no objections were filed, that was the agreed upon advisory guideline range with the exception of the three level reduction for acceptance. Now, after that, the government also agreed within the plea agreement that they reserve the right to make a sentence recommendation. Unfortunately, a vague term. The defendant reserved no such right. The defendant only reserved the right to appeal from a sentence in excess of the applicable advisory guideline range established as sentencing. Again, we contended that upward motion where the breach occurred. Just very briefly looking at a case outside of the three... The point being is that it contemplated that he might be sentenced above whatever the guidelines would be, right? That's why he preserved that right of appeal. I disagree, Your Honor. I disagree. Now that is what the government alleged within their response brief, and I can understand why you may think that, but when you preserve... Let me back up. The defendant understood, and we always understand when you go into a sentencing hearing, that the court may vary upward. The court is no longer, because of the Booker case, as we know, the court is no longer bound to an advisory guideline range. So it's understood that any time you walk into a sentencing hearing, the court may vary upward. The difficulty here and the problem here is that that's not what occurred in essence. What happened is the government filed a motion for upward departure or upward variance. That's where the breach occurred, Your Honor. I believe that the court, I believe that we're here today because the court recognized and in essence granted the government's request for an upward variance or an upward motion. So again, the government argues that specifically. Absolutely, there's no connection between the two. Just because you acknowledge that the district court can sentence you above a guideline range does not acknowledge that the government is requesting a sentence above the guideline range. Very often there are situations where the government recommends an advisory guideline range sentence. The parties both do that. The court listens to the facts of the case. The court listens to the circumstances and the past history of the defendant and decides, you know, I've heard it myself, I just don't agree with the government's recommendation. I don't agree with where the parties are as far as an advisory guideline range. So just because the defendant reserved the right to appeal a sentence above the guideline range does not acknowledge in any way that he believed or thought or anticipated the government filing a motion for upward departure or variance. Let me ask you a quick question. I know you objected to the motion, but did you make the objection regarding the plea agreement, the argument regarding the breach of the plea agreement below? I did not represent the defendant. I mean, was the argument made? I'm sorry. Was the argument made below that this was a breach of the plea agreement? I don't believe it was, Your Honor. I don't believe it was. I think it's being raised when I was appointed for the appeal subsequent to resentencing and met with Mr. Johnson. The court allowed me to travel and meet with Mr. Johnson. We had a very, very long discussion about this exact issue because his understanding was he had a sentencing range and that all of a sudden he sees the government filing a motion. I'm not sure you want to reveal attorney-client privilege by talking about his discussions, right? Yes, Your Honor. I mean, you can make whatever representations you want, but maybe just don't phrase them as your conversations with your client. Thank you, Your Honor. But my understanding is that his understanding was that this was not going to occur. The situation here was that I don't believe anything was objected to at the lower level. My review of it and meeting and discussions with the defendant caused us to file this appeal based upon what we see as a plain breach of the actual plea agreement. Again, the plea agreement here talks about the government reserving the right to make a sentence recommendation. There is nothing in here about the defendant being able to make a sentence recommendation. The position we're in right now and I don't want to mispronounce this, but it's going back to school here. The maxim expressio unius exclusio alteris provides that when a written instrument mentions specific terms, an implication arises that items not present were not intended to be included within the scope of the written instrument. The government agreed to make a sentence recommendation. There's absolutely no mention whatsoever of the government making a sentence recommendation above or below a guideline range. It doesn't say the defendant can make a sentencing recommendation or a variance request either, right? Correct, Your Honor. You don't think the plea agreement prohibits the defendant from asking for a given sentence or requesting a variance? I mean, that which is not included sometimes just isn't included, right? I believe that there was nothing in there as far as the defendant, there's no such reservation rights. So I believe the defendant was free to do that. Absolutely free to do that. Did the defendant do that in this case? He did. There was a, the district court at the original sentencing was looking at a guideline range like 151 to 188. The district court sentenced him to 128. So his attorney at the resentencing asked for the same percentage reduction. His attorney at the resentencing said, look, he received this percentage reduction from the career offenders guideline. Please consider a variance below the guideline range below a sentence of 57 months. I believe it was 48, but I know it was in the 40s. I think it was 48 that the attorney did recommend. So they asked for a variance, but I didn't see any problem with that. Looking at Peterson case, Peterson case, again, it's unpublished, but the defendant reserved the right to ask for a below guideline sentence. The government only reserved the right to make a recommendation of a reasonable sentence. So thereby, the defendant had the right to ask for below guidelines. And this court in Peterson determined, well, that's ambiguous. Government only was able to make a recommendation that was nothing about being above or below the guideline range. And so this court determined in Peterson that the court, well, the government breached the plea agreement. That is exactly our argument here, is that the defendant could certainly ask for a sentence below the guideline range because there were no constraints. There were no reservations. It was totally silent as to that. What is important is that the government agreed to make a sentence recommendation. When they did that, they excluded any language whatsoever as to an upward adjustment or an upward variance. So by not including that, it certainly shows that that was intended not to be included as part of it. This is an extremely ambiguous situation. Again, ambiguities in plea agreements are construed against the drafter, against the government. We'd ask the court to do the same thing here. We'd ask the court to please determine that the government did plainly breach the plea agreement when they filed a motion for upward adjustment. Not necessarily the court sentencing him above the guideline range, but when the government filed the motion for upward adjustment, we contend that they breached the plea agreement. Thank you. Thank you. Mr. Gibbons. Good morning, Your Honors. May it please the court, John Gibbons for the United States. I want to focus on two simple points. First is the plea agreement is clear and unambiguous. Yes, of course, ambiguity is construed against the government if there's ambiguity, but there has to be ambiguity first to construe something against the government. This argument is an argument in search of an ambiguity to justify it. The plea agreement says the United States agrees that it reserves the right to make a sentence recommendation. That's not ambiguous. It just doesn't have any limitations. It's broad, yes, but it's clearly broad. It reserves the right that the United States would have had in the absence of a plea agreement to make the sentencing recommendation that it reasonably believes is appropriate in this case. Point two is agreements not included in a plea agreement are simply not part of the agreement. The government is held to the promises that it makes, and the government zealously holds to the promises that it makes, but when the government doesn't make a promise, the defendant can't hold the government to the promises not made. And I think the plea agreement is clear that this isn't part of the plea agreement. As I said, paragraph five, I'm sorry, paragraph 4B said the United States reserves the right to make a sentencing recommendation, and then in paragraph five it says the parties agree to the following positions as to the below listed sentencing factors only. Only those sentencing factors are subject to agreement. The defendant argued that once there were no objections that this became the agreed upon range, but that's not how sentencing works. You can't say once the court sets the sentencing range at sentencing that that retroactively turns into the agreed upon range. The party or the agreement is clear that this is the full and complete record of the plea agreement. There are no other agreements between the parties in addition to or different from the terms, and as your honors pointed out, the defendant of course retained his own right to make a sentencing recommendation, which he did. He twice asked for a downward variance. The government does not believe that was a breach because it wasn't a breach. It just wasn't part of the agreement. And for the same reasons, your honor, the government's motion for upward variance or departure likewise was not a breach of the agreement. So you're saying before sentencing you make a motion for upward variance. That's the same thing as a recommendation? I'm not sure I understand. You don't understand that? That's what you did, right? You made a motion before sentencing for upward variance, right? Yeah, of course. And you said that's the same thing as reserving a right to make a recommendation? Yes. That's the same thing as a recommendation? Yes. I mean, there's no language in the agreement that precludes the United States from making a motion. Yeah, but the whole idea is that you lure people away from their most precious right, a right to a trial. And that's important. Isn't that important? The question is, because the thing is that you represent the United States. I say that, I mean that. It's very important. Because there's nothing more precious about our system of justice than that you have a right in the Sixth Amendment in terms of trial, a fair trial. You lure them out of that, don't you? Isn't that luring? I don't mean luring in that sense that's illegal. Sure. But in a sense of a connotative sense, it is luring them. You could just go to trial too, right?  But isn't that the spirit is valid? You say, okay, well, we reserve the right to make a recommendation. Isn't the fair understanding is that you'll make a recommendation within the guidelines? That's great. You could make a recommendation to the top of it maybe or whatever, or bottom or the middle. But to make a motion for an upward variance, you don't think that violates the spirit of somebody being lured into giving up all those rights? First of all, the defendant is not trying to withdraw his guilty plea. He doesn't claim that he was unreasonably lured into this plea or that he was misled. He just wants a resentencing. He says the government breached by asking for a higher sentence as it specifically reserved the right to do. Well, I think his argument is that the government reserved his right to ask for it. And maybe that's what maybe in terms of looking at the agreement, he's saying the reservation of rights was asked to the sentencing guidelines, the range that the government could ask for the, I guess, higher end of the range, not as to filing a motion for upward variance. So I'll be glad to hear from you on that. And I know the defendant also asked for a downward variance. And at the first sentencing hearing, the issue was whether the defendant was a career offender. The United States believed he was. The defendant believed he wasn't. Both sides argued their point and neither side breached the agreement because the guidelines range hadn't been set at that point. They agreed to these sentencing factors only. As to your point, Your Honor, about whether the right to make a sentencing recommendation encompasses the right to ask for an upward variance. So if you look at the Peterson case, the language at issue there was the United States reserved the right to make a reasonable recommendation. Does it make a difference? Would this have been a different pre-Booker? So in other words, we're sitting now post-Booker. The Constitution requires that the guidelines be a factor, but just that. They're not binding on anybody. That's the whole point. They're not binding on the government. They're not binding on the defendant. They're not binding on the court. It certainly could have been different. Pre-Booker, because they were binding, it might have a different feel. But I guess one of the challenges I've got is that it's hard for me to see why the guidelines have any sort of like magical sort of import in sentencing now. I mean, sometimes our review looks different if it's within the guidelines. I'm not really sure why that is. But they are one factor. As the Supreme Court has told us, the Constitution requires that they just be one factor. That's all we can make up. Absolutely. And sometimes the United States in plea agreements does agree to recommend a within guidelines range, low-end guidelines range. Sometimes the government agrees to make a motion for downward departure or to not make a motion for upper variance. But none of that is in here. If the United States had agreed to it, it would be here. It would be explicit. And that's the Snow case. In the Snow case, this court said that when the United States is waiving prosecutorial discretion, authority that it inherently has, an implicit waiver is not enough. It has to be explicit in the agreement itself. And that's what defendant is saying here, that the United States, you can piece these other parts of the agreement together and look at what he thought would probably happen and say, okay, the United States waived its prosecutorial discretion. And that's just not the case. Fair enough. But why don't you tell them then, when they're given away all their Constitution rights, and say this, we reserve the right to make a recommendation up to the maximum sentence. Wouldn't that be fair? So they can say, okay, I understand that. You can recommend all the way to the statutory maximum. Clear as day. Don't you think that would be fair so they would know that? You come to hear this court, appellate court, and say, well, you know, and you're right, you're right, you're right. The case law seems to be very much in your favor in that regard. But I'm talking about a sense of common sense and a sense of, Jim, I think what the framers would admit to me, I mean, I think they would sort of roll over some of this stuff now. Acquitted conduct, related, relevant, everything. So interesting. But the point is, why don't you just tell them that? So then we don't have to be here. So we can say, no, you saw that. It said they could do it up to the max. You don't do it because a lot of people wouldn't take those if you were very clear, would they? Well, Your Honor, I agree. Would they? Come on, I know. That's between us. They wouldn't take those with them. It's what's called clear. They wouldn't take them with them. Well, they are told at the Rule 11 hearing that what the maximum sentence is, they are told that any sentencing recommendation is just a recommendation that the court could impose up to the maximum sentence. Are most plea agreements entered without stipulations at all? With no limitations on what it's going to be? Absolutely. In fact, most defendants accept plea agreements that have no limitation on the government's recommendations or arguments with respect to the guidelines or otherwise. In fact, in most instances when these are negotiated, the party that wants some limitation on drug weight, for example, is the defendant. Absolutely. It benefits the defendant and not the government to cap the amount of drug weight that he can be responsible for. Because no matter what the government finds that this defendant is responsible for, the government will honor that limitation and argue for a sentence based on that drug weight. Your Honors, going back to your point, Judge Gregory, you know, I of course agree that one way a trial in the U.S.A. could handle this is to make explicit to the defendant, we might move for an upward variance. That would be fair, but that doesn't make what happened here unfair. The defendant had counsel. He had an agreement with specific terms. The agreement was specific that the agreement was only as to those terms, and it said nothing about any upward variance. So in the absence of that, the government retains its right to make an upward variance motion, to make an upward departure motion, and to ask for a sentence that's higher than the guidelines. Yeah. It's interesting. This case is, you know, it's a lot of things here because he won his appeal. It's kind of, you know, you're getting more time because you won your appeal. Not because, but the result is he won the appeal. One of those predicates turned out not to be a predicate, and he wound up getting more time. He got less time. I mean, what I mean, but in terms of the idea, right? Well, you're sentenced, you have to look at the sentencing package. In terms of relative more time. Go ahead. Yeah, I mean, I get your point. You're saying he received 128 for two counts versus 120 for one count. Right. But the district court at the first sentence hearing said specifically, I don't think a 70-month range is going to accomplish the sentencing factors. So it seems odd, but when you look at it, the district court was really doing her job correctly. She was looking at the defendant and making it tailored to his situation. And his situation wasn't necessarily completely determined by whether he was a career offender or not. She was looking at his criminal background. And had it been completely determined by whether he was a career offender, she would be in violation of our sentencing law because the guidelines can only be a factor. Absolutely. They cannot determine the sentence any longer. I guess maybe the answer is the Rule 11 colloquy probably could be better. Right? In the sense that it should be in a sense the way to push that. Really say, you know, you might be crazy to take this, but this is what you're giving up. You know, you're giving up that. I could give you the maximum sentence. You're giving up a right to bring your witnesses in. You do that, all of those things like that. Wouldn't it be better if the court would tell them that you really should think about this before you do this because you're giving up a whole lot of things as being under our system. No system in the world is like ours. You know, that would be fair. And then they say, you know, Judge, you've given me that and I can understand that. It sounds like what the framers were saying. I don't think I'll take it. Or maybe they do because then that's what we get all the time. My lawyer told me I was going to get this. If the court would just tell them in the Rule 11, just say, listen, I'm going to talk you out of it almost. Really, don't you agree? Then you have to worry about what your lawyer told me. You can just say, look, I don't care what your lawyer told you, I can give you the maximum sentence. And you give up all of these rights. You really want to do that? You sure? But I've never seen one like that. I've been on the court almost 23 years. Because it's not required. Somebody who decides that's what it ought to be, some of them have tried cases or not. But they set the gauge for it. And then you read it. It's like 10 people lined up together. They all lined up together and they hit it at the same time. At a high level, as a normative matter, sure. There's definitely an argument that the Rule 11 colloquy could be different. But that's a question for the Rules Committee. It doesn't have to be a question for the Constitution. That's exactly what it should be. That's the problem. It ought to be a question for the Constitution, not just a question of what's efficient. But the Constitution. I certainly agree that that's a fair argument. But based on settled law, based on what we have here, the agreement was legal, constitutional, and valid. Yeah, it is. It's valid. The spirit of it, like you said, that's something that's different. I'm not sure about that, but you're probably right. I don't know where we're heading as a nation, though. But the way it's done, we already have a whole lot of people incarcerated. More than most developed countries in the world. I appreciate your concern, Your Honor. I'll just close, unless there are any further questions. I just have one question. In looking at his argument that the government breached the agreement, does it make a difference that at the first sentencing hearing, the government did not ask for upward clearance? No. I mean, that goes to the same issue of whether the government gave away its discretion. It used its discretion at the first hearing to not ask for it, and then on resentencing, the government changed its mind and used its discretion differently. His criminal history got better the second time, and that's when he decided to ask for more time. And that would amount to, right, his criminal history got better, didn't it, when the predicate fell off? Yeah, certainly. But the United States believed that this certain sentence was appropriate given the circumstances. I mean, the law changed. His criminal history didn't change. The law didn't change. Yeah, that's correct. His criminal history changed in the sense that one conviction wasn't a career offender predicate. That's what I'm saying. His criminal history changed. Under the guidelines, right? The guidelines changed. But that's sort of back to this point that the guidelines are one factor to be considered, but the judge and the government considers the entirety, including non-guidelines considerations in determining what the appropriate sentence is, right? This is the individualized consideration of each case, taking into account the guidelines, but not just sentencing on the guidelines. Absolutely. And I take your Honor's concerns about the contours of the process. I think they're reasonable concerns. But I just want to close by reassuring the Court. Our office takes plea agreements very seriously, and we assiduously make efforts to comply with the terms of the sentencing agreements to be fair and to do justice as the Department of Justice is obligated to. And we ask the Court to affirm. Thank you so much. Appreciate it. Mr. McIntyre, you have a little time reserved. Thank you very much, Your Honor. The Counsel for Government began his argument by stating that the plea is clear and unambiguous. The Western District, where I routinely practice in North Carolina, every plea I've seen since the Booker case came out says that either party may advocate for a sentence above or below this guideline range. Either party may advocate for an adjustment, for a departure, for a variance. Occasionally, that's not in there because it's stipulated that no one will do that. But the routine language is that's what will happen. It's very clear, based upon those plea agreements, where everybody stands. And that's gone over and it's reviewed routinely with defendants at a plea hearing. And that language has gone over at plea hearings. This situation is very different. It's absolutely silent as to the defendant's ability to advocate for a sentence below the guideline range. But it's clear that the court says, but the government reserved the right to make a sentence recommendation. The government has different rights than the government. There's a different right. What about a government's position that it has to be an explicit waiver? I don't see that, Your Honor. Again, when we're looking at the maximum of what's intended and what's not intended, then this is purely more of a contract. It really is a contract between the parties. And the government went out and stated, we'd like to make a reasonable sentence recommendation. They also put in there that this is the guideline range. So the defendant is looking at this. He understands there's a base offense level. He understands that of 22. He understands he's getting a three-level reduction. He understands the government's going to make a recommendation. But he also understands that those are the only two factors, right? That's the intro to those two factors. It's the only two factors on which there's agreement. So if the government wanted to advocate, I assume you agree, if they wanted to advocate for a leadership enhancement, that wouldn't have been prohibited by the agreement, right? I'm not saying the facts supported it, right? That's not my point. The point is that when they say, we agree only to these two things, they have not agreed to the leadership enhancement. Correct. And if the leadership enhancement came back, then he could have objected to that and that would have been determinative sentencing. But what you're throwing out there and what you're proposing is different from what happened. There was not a leadership enhancement coming back. There was not an adjustment in the offense level. This was the government making a motion above the base offense level. The point, it seems to me, is that those are questions about the guidelines, right? And the point here is post-Booker, the guidelines are just one factor that the court and the government considers in determining what the appropriate sentence is, right? They're no longer this sort of magical anchor, right? That's absolutely correct, Your Honor. But at the same time, what's different is now they are making a motion for upward departure or upward bearings. There's not a hearing at sentencing about a leadership role. There's not an issue about an advisory guideline range. Because if there was an enhancement to level three, four level enhancement for leadership role, and that was hammered out at sentencing, then we would have a new advisory guideline range. And then the court would be looking at that advisory guideline range. The difficulty here and the reason the government briefly here is because that's a different situation from what happened. What happened here is there was not a determination at sentencing as to what the advisory guideline range is, and then the government asking for a sentence within that range. This is a situation where the government filed a motion for upward departure or upward bearings based upon a base offense level of 22. They did not argue that there's some sort of adjustment in the range or what the advisory guideline range should be. What they did was acknowledge, this is our advisory guideline range. It is 22 minus 3, which is 19. 57 to 71 months. We want you to depart upward based upon his prior conduct, based upon his criminal history, based upon other factors. And when they did that, they breached the plea because the plea was silent as to their ability to do that. If they included that language in here, obviously it wouldn't be silent. There'd be a specific term to that. They didn't do that. They limited themselves to a guideline range sentence, whatever that sentence would have been determined at sentencing. Thank you. Thank you. Thank you, Mr. McIntyre. I note, Mr. McIntyre, that you were a court opponent. On behalf of the Fourth Circuit, I want to thank you specifically for that. We depend upon lawyers like yourself to take on these cases, and we thank you so much. As well as we acknowledge the able representation of the United States by Mr. Gibbons. All right, we'll come down. We'll come down to Greek Council and proceed to our next case.
judges: Roger L. Gregory, Julius N. Richardson, DeAndrea Gist Benjamin